Ellen C. Pitcher, OSB No. 81445
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: ellen_pitcher@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR No. 11-149 SU |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JURY TRIAL |
| vs. | |
| **BRIAN GENE SNOW,** | |
| **Defendant.** | |

On April 28, 2011, the defendant, Brian Gene Snow, made his first appearance in the above-captioned case. He was appointed counsel, and through that counsel, Ellen C. Pitcher, entered a Not Guilty plea and requested a jury trial. Assistant United States

Attorney Ryan Bounds informed the Court that he did not believe Mr. Snow was entitled to a trial by jury, given that the offense charged, Assault by Striking, Beating or Wounding, 18 U.S.C. § 1339a)(4), was punishable by no more than six months. The Court then set the case for a court trial, but gave leave to the defense to file a motion for a jury trial. Mr. Snow has now done so; this Memorandum is filed in support of his Motion. Mr. Snow asserts that under the Sixth Amendment to the United States Constitution, he is entitled to a jury trial because a conviction in this case, given the government's allegation of domestic assault, would result in a mandatory lifetime termination of Mr. Snow's right under the Second Amendment to possess a firearm, thus rendering the charge in this case a "serious offense".

## FACTUAL BACKGROUND

Brian Gene Snow was charged by information with violating 18 U.S.C. § 113(a)(4), assault by striking, beating or wounding, on April 18, 2011. The alleged assault occurred on April 17, 2011, on the Confederated Tribes of the Umatilla Indian Reservation. The alleged victim of the assault, Kristen Moses, is the mother of Mr. Snow's one-year-old son. If convicted of this offense, Mr. Snow would be subject in the future to prosecution under 18 U.S.C. §922(g)(9) if he possessed a firearm, as one "who has been convicted in any court of a misdemeanor crime of domestic violence." Trial is currently set for October 25, 2011, before Magistrate Judge Patricia Sullivan in Pendleton, Oregon.

**ARGUMENT**

I. **The Sixth Amendment To The United States Constitution Guarantees The Right To A Jury Trial For All Serious Offenses.**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." U.S. Const. Amend. XI. The Supreme Court has narrowed the Constitution's broad guarantee of the right to a jury trial to exclude crimes and offenses characterized as "petty." *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).

Where the maximum term of imprisonment imposed under a statutory offense is six months or less, a presumption arises that the offense is petty, foreclosing the defendant's right to a jury trial. *Blanton v. City of North Las Vegas, Nevada*, 489 U.S. 538, 543 (1989). However, "there clearly comes a point where potential punishment other than incarceration may be so severe that the offense will no longer be considered petty." *United States v. Ballek*, 170 F.3d 871, 876 (9th Cir. 1999). An otherwise petty offense becomes "serious," entitling a defendant charged under it to a trial by jury,[1] based upon

---

[1] Preservation of the right to trial by jury for serious offenses derives from the recognition that,
> The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant

the collateral impacts of conviction upon the defendant. *See, e.g., United States v. Smith*, 151 F. Supp. 2d 1316, 1317-18 (D. Okla. 2001) (lifetime ban on possession of firearms made charged offense serious); *United States v. Richter*, 903 F.2d 1202, 1205 (8th Cir. 1990) (15-year revocation of driver's license, six months imprisonment, and $500 fine made charged offense serious); *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 664-65 (2d Cir. 1989) (severity of potential fine made charged offense serious); *United States v. Donovo*, No. A02-18 CR, 2002 WL 1874838, at *3 (D. Alaska 2002) ("When, in addition to imprisonment for six months, the government has the power to impose fines of $100,000, it is flexing considerable muscle. The conflict deserves a jury to act as the referee."); *United States v. Lucero*, 895 F. Supp. 1419, 1420 (D. Kan. 1995) (severity of potential fine made charged offense serious).

Classification of an offense as serious rather than petty turns on the enacting legislature's intent. *Blanton*, 489 U.S. at 541-42 ("The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is far better equipped to perform the task, and is likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect." (citation omitted)). While the most significant indication of Congress's intent is the

---

> preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it.

*Duncan*, 391 U.S. at 156.

maximum term of imprisonment imposed, "[a] legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense." *Blanton*, 489 U.S. at 542. "This is especially true if the punishment may be imposed *in addition* to a term of imprisonment." *Ballek*, 170 F.3d at 876 (emphasis in original). Ultimately, the Court must look to "objective criteria" to determine whether the collateral consequence cited manifests Congress's intent to create a more serious offense, triggering the Sixth Amendment right to a jury trial. *United States v. Clavette*, 135 F.3d 1308, 1309 (9th Cir. 1998).

Mr. Snow is charged with misdemeanor assault under 18 U.S.C. § 113(a)(4).[2] Because the maximum term of imprisonment the Court may impose is six months, this section presumptively creates a petty offense. However, if convicted under § 113(a)(4), Mr. Snow will have been convicted of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). The collateral consequence of a conviction in this case is a lifetime prohibition from the possession of firearms. 18 U.S.C. § 992(g)(9). The severity of the collateral consequence of conviction thus manifests Congress's intent to treat

---

[2] 18 U.S.C. § 113(a)(4) provides,

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: . . . (4) Assault by striking, beating, or wounding, by a fine under this title or imprisonment for not more than six months, or both.

§ 113(a)(4) as a serious offense in the domestic violence context.  *See infra* Part II.

II.  **Mr. Snow Is Entitled To A Jury Trial Under The Sixth Amendment Because The Mandatory Lifetime Prohibition On Firearm Possession Imposed Under § 922(g)(9) Reflects Congress's Intent To Treat Assault As A Serious Offense.**

If Mr. Snow is convicted of assault under § 113(a)(4), he will have been convicted of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) because the alleged assault involved the mother of his child. 18 U.S.C. § 921(a)(33)(A).  Section 922(g)(9) provides,

> It shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The mandatory lifetime prohibition on firearm possession under § 922(g)(9) reflects Congress's intent to treat domestic violence assault as a serious offense, and for the following reasons, Mr. Snow is entitled to a jury trial.

  A.  **The Right To Possess Firearms Is A Fundamental Right.**

If Mr. Snow were convicted under § 922(g)(9), he would be subject to the mandatory, lifetime deprivation of a constitutional right.  In *United States v. Smith*, the defendant, facing the precise charge the government has charged Mr. Snow with violating in the present case, requested a jury trial.  151 F. Supp. 2d 1316, 1316 (D. Okla. 2001).  Holding that a lifetime deprivation of the right to arms was a severe penalty

indicative of a serious offense, the court reasoned,

> Possession of a firearm for military purposes, self protection and sport has been an important aspect of American life throughout our history. Today, the issue of Governmental restriction of firearm possession is hotly debated. Substantial segments of American society hold strong opinions on the issue. Many advocate strict government restrictions on the ability to possess firearms while many others take the opposite view and consider firearms possession to be an integral part of their lives. In this context, the issue is very serious.

*Smith*, 151 F. Supp. 2d at 1317.

*Smith* is well-reasoned and persuasive. Moreover, *Smith* was decided in 2001, seven years before the Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Post-*Heller*, the individual's right to keep and bear arms is protected under the United States Constitution. *Id.* at 636. The right to arms is a fundamental constitutional right. *McDonald v. City of Chicago, Illinois*, 130 S. Ct. 3020, 3050 (2010) (finding the Second Amendment incorporated in the Fourteenth Amendment; "a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States."). It follows that deprivation of a fundamental right is a severe penalty requiring a jury trial.

The only Circuit Court case to address this issue was decided well before the importance of the Second Amendment was clarified by the Supreme Court in *Heller* and *McDonald*. In *United States v. Chavez*, the Eleventh Circuit held that assault under

§113(a)(4) is not a serious offense, even in the domestic violence context.[3] 204 F.3d 1305, 1314 (11th Cir. 2000). However, given that the right to arms has since been recognized as a matter of constitutional magnitude, this Court should not afford the *Chavez* decision deference.[4]

Permanent prohibitions on firearms are traditionally reserved for those persons convicted of felonies. *See Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons or the mentally ill . . . ."); *see also* Michael P. O'Shea, *Federalism and the Implementation of the Right to Arms*, 59 Syracuse L. Rev. 201, 219 n.82 (2008) (arguing that § 922(g)(9) is

---

[3] The *Chavez* court reasoned that language in 18 U.S.C. § 921 suggesting that not all crimes of domestic violence would be tried to a jury evidences Congress's intent to treat some of these offenses as petty crimes. 204 F.3d at 1314. However, as noted in *Smith*, this reasoning is flawed. 151 F. Supp. 2d at 1317.

> [T]he issue is not whether Congress recognized a right to a jury trial for domestic violence offenses. The issue is whether the penalty Congress attached to the offense was serious enough to entitle the Defendant to a jury trial under the 6th Amendment. Having examined that issue, the Court finds that a lifetime prohibition on the possession of a firearm is a serious penalty which entitles a Defendant to a jury trial under the 6th Amendment.

*Smith*, 171 F. Supp. 2d at 1317.

[4] *Heller* overrules *Chavez*'s erroneous assertion that "Chavez might not have any claim under the Second Amendment since he has not shown his gun possession is reasonably related to a state-run militia." 204 F.3d 1305, 1313 n.5 (11th Cir. 2000). The Second Amendment confers an individual right to keep and bear arms that is entirely detached from any state-run militia. *Heller*, 554 U.S. at 588-89.

unconstitutional post-*Heller* for subjecting persons convicted of misdemeanors to the automatic deprivation of a constitutional right). The fact that a person convicted of a misdemeanor could be subject to a prohibition traditionally reserved for convicted felons further demonstrates the seriousness of the offense charged in this case.

Ultimately, the deprivation of a fundamental constitutional right is a serious penalty, that, when taken together with six months maximum incarceration, evidences "the kind of strong disapproval associated with a serious crime." *Richter*, 903 F.2d at 1205. The Sixth Amendment requires that Mr. Snow retain the right to a jury trial before the state subjects him to a lifetime deprivation of his constitutional right to bear arms.

### B. The Penalty For Violating The Lifetime Prohibition on Firearms Possession Under § 922(g)(9) Is Severe.

Under § 924(a)(2), a person who possesses a firearm in violation of § 922(g)(9) is subject to a ten-year maximum period of incarceration. 18 U.S.C. § 924(a)(2). As noted by the *Smith* court, "the penalties imposed under 18 U.S.C. § 924 for violating the prohibition (10 years) demonstrate that Congress views the prohibition as serious." 151 F. Supp. at 1317-18. Denying Mr. Snow the right to have a jury decide whether he has actually committed the conduct which makes him subject to prosecution under §922(g)(9) makes his right to a jury trial under the latter statute ring hollow.

### C. Only Domestic Violence Assault Is Subject To The Ban On Firearms Possession.

Only those assaults that fall under the statutory "misdemeanor crime of domestic violence" umbrella qualify for the lifetime prohibition from possession of firearms. 18 U.S.C. § 922(g)(9). Assaults chargeable under 18 U.S.C. §§ 113(a)(4)-(5) that are not "misdemeanor crime[s] of domestic violence" are punishable by the same maximum term of six months imprisonment and a fine, but do not carry the further collateral consequence of a lifetime ban against firearms possession. . By distinguishing "misdemeanor crime[s] of domestic violence" from other misdemeanor assaults, Congress manifested its intent to treat domestic violence assaults more seriously than other misdemeanor assaults. Combined with the significant intrusion presented by a lifetime prohibition on the possession of firearms, this fact demonstrates Congress's intent to treat assault in the domestic violence context as a serious offense.

### D. The Mandatory Prohibition On The Possession Of Firearms Is Distinguishable From Collateral Consequences That Are Imposed For Convictions Of Petty Crimes.

The lifetime ban of firearms possession resulting from a conviction in this case is clearly distinguished from other cases where courts have determined that the collateral consequences of a petty offense are not serious enough to implicate the right to a jury trial. Courts have frequently held that the imposition of certain fines are not severe enough to invoke the Sixth Amendment right to a jury. *See, e.g., Muniz v. Hoffman*, 422

U.S. 454, 476-77 (1975) ($10,000 fine not alone enough to classify offense as serious); *United States v. Nachtigal*, 507 U.S. 1, 4 (1993) (fine not serious); *Ballek*, 170 F.3d at 876 (same). In contrast to a mere fine, however, the present punishment constitutes a lifetime deprivation of a fundamental right in addition to the statutory penalties.

Moreover, the collateral consequence of conviction in the present case is distinguishable in its severity from many Sixth Amendment cases on the ground that it is permanent. *See, e.g., Blanton*, 489 U.S. at 544 (90-day driver's license suspension plus 48 hours of community service dressed in clothing identifying defendant as a DUI offender not severe enough to indicate that crime was serious); *Nachtigal*, 507 U.S. at 5 (5 years' probation as alternative to imprisonment not enough to classify offense as serious); *United States v. Spivey*, 781 F. Supp. 676, 679 (D. Haw. 1991), *aff'd*, 980 F.2d 740 (9th Cir. 1992) (fourteen-hour alcohol abuse program, a maximum 90-day suspension of driver's license, and up to 72 hours of community service work not indicative of serious offense). Unlike these temporary consequences of conviction, the deprivation of the right to possess a firearm under § 922(g)(9) is mandatory and permanent. Because the presumption  The Sixth Amendment thus requires a jury trial in the present case.

## CONCLUSION

The collateral consequence of a lifetime prohibition on the possession of firearms which would result if Mr. Snow were convicted under the allegations in this case

converts this § 113(a)(4) prosecution into a serious offense entitling Mr. Snow to a jury trial. For the foregoing reasons, Mr. Snow respectfully requests that his Motion for a Jury Trial be granted.

  RESPECTFULLY SUBMITTED this 23rd day of September, 2011.

               /s/ Ellen C. Pitcher
               Ellen C. Pitcher
               Attorney for Defendant