DWIGHT C. HOLTON, OSB #090540
United States Attorney
District of Oregon
**RYAN W. BOUNDS, OSB # 00012**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
ryan.bounds@usdoj.gov
         Attorneys for United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 11-cr-149 (SU) |
| v. | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JURY TRIAL** |
| **BRIAN GENE SNOW,** | |
| Defendant. | |

The United States of America, by Dwight C. Holton, United States Attorney for the District of Oregon, through Ryan W. Bounds, Assistant United States Attorney for the District of Oregon, submits the following response in opposition to defendant's motion for jury trial.

This case arises from a single-count information charging defendant Brian Snow with assault by striking, beating, or wounding another within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(4).  The offense is punishable by a fine and "imprisonment for not more than six months." *Id*.  It is thus a Class B misdemeanor, *see* 18 U.S.C. § 3559(a)(7), and a "petty offense," *see* 18 U.S.C. § 19 ("[T]he term 'petty offense' means a Class B misdemeanor . . . .").  Notwithstanding Congress's explicit designation of the charged offense as "petty," defendant moves for a jury trial on the premise that "the charge in this case [is] a 'serious offense.'" (Def. Mem. at 2.)  Defendant's claim is contrary not only to statute

but to both common sense and the overwhelming weight of jurisprudential authority on the issue. The motion should be denied.

The incident in question involved defendant's intentionally striking, beating, and wounding KAM, an Indian female. It is undisputed for purposes of this motion that this offense, if proven, would qualify as a "misdemeanor crime of domestic violence" as that term is defined in 18 U.S.C. § 921, because the crime "has, as an element, the use or attempted use of physical force" and defendant "shares a child in common" with KAM. 18 U.S.C. § 921(a)(33)(A)(ii). As a result, defendant's conviction would render him presumptively prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g)(9).

Defendant argues that this "collateral consequence . . . manifests Congress's intent to treat [a violation of] § 113(a)(4) as a serious offense in the domestic violence context." (Def. Mem. at 5–6.) Every court but one to consider the question, however, has properly rejected this contention. The language of the statutory provision on which defendant relies makes it plain that Congress did not regard domestic violence crimes as "serious offenses" for Sixth Amendment purposes. In any event, the possibility that the particular facts underlying defendant's conviction would result in his being prohibited from possessing a firearm bears not at all on Congress's determination of whether violations of 18 U.S.C. § 113(a)(4) are themselves "serious."

### I. The Sixth Amendment Guarantees Trial by Jury Only for "Serious Offenses," as Objectively Determined by the Severity of the Penalties Authorized by the Legislature.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy a right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

Despite the breadth of the Amendment's language, the Supreme Court has long held "that the right of trial by jury, thus secured, does not extend to every criminal proceeding." *District of Columbia v. Clawans*, 300 U.S. 617, 624 (1937). Instead, "the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of *serious* offenses." *Lewis v. United States*, 518 U.S. 322, 323–24 (1996) (emphasis added). As a result, "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)); *see Lewis*, 518 U.S. at 323–24 ("The Sixth Amendment's guarantee of the right to a jury trial does not extend to petty offenses.").

In determining whether a federal crime is "serious" or "petty," this Court must defer to Congress's own categorization of the crime based on the statutory penalties that Congress has authorized. (Def. Mem. at 4–5.) *See Lewis*, 518 U.S. at 326 ("[T]o determine whether an offense is petty, we consider the maximum penalty attached to the offense."); *Blanton v. City of Las Vegas*, 489 U.S. 538, 541 (1989) ("The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is far better equipped to perform the task"); *United States v. Clavette*, 135 F.3d 1308, 1310 (9th Cir. 1998) ("In classifying an offense as petty or serious, the Court looks only to the legislature's determination of the seriousness of the crime.").

Congress indicates its categorization of a federal offense as "serious" or "petty" with "primary emphasis on the maximum prison term authorized." *Lewis*, 518 U.S. at 326. If Congress sets the maximum potential prison term at six months or less, Congress objectively categorizes the offense as a petty one. *See id.* at 327. ("Here, by setting the maximum authorized prison term at six months, the Legislature categorized the offense . . . as petty."); *id.* at 328 ("[I]t is now settled that a legislature's determination that an offense carries [a] maximum prison term

3

of six months or less indicates its view that an offense is "petty."). Although the Supreme Court has acknowledged the possibility that penalties other than imprisonment may establish that the legislature regards an offense as "serious," the Court has emphasized that such an outcome would be "rare." *Blanton*, 489 U.S. at 543; *Clavette*, 135 F.3d at 1310 ("The Supreme Court has only once found a crime with a prison sentence of six months or less to be serious. In that case, the fine was $52 million.").

The collateral consequences that a defendant faces—as opposed to "statutory penalties"—are irrelevant to assessing whether a crime is serious. *See Lewis*, 518 U.S. at 328 (rejecting reliance on "the particularities of an individual case"); *Blanton*, 489 U.S. at 543 (1989) ("Only if [a defendant] can demonstrate that any additional *statutory penalties*, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a *legislative* determination that the offense in question is a 'serious' one." (Emphases added)).

      **II.**    **In Authorizing a Maximum Punishment of Imprisonment for Six Months, Congress Has Unequivocally Indicated That it Deems Assault in Violation of 18 U.S.C. § 113(a)(4) To Be a Petty Offense.**

Defendant concedes, as he must, that the violation of 18 U.S.C. § 113(a)(4) with which he has been charged is "presumptively . . . a petty offense." (Def. Mem. at 5.) Not only has Congress explicitly defined it as "petty" by statute, *see* 18 U.S.C. § 19 ("[T]he term 'petty offense' means a Class B misdemeanor . . . ."), but Congress has authorized a maximum penalty of "imprisonment for not more than six months," 18 U.S.C. § 113(a)(4). Nothing about the penalty structure of § 113(a)(4) itself suggests that it is anything but a petty offense for Sixth Amendment purposes, and defendant does not argue otherwise.

4

Indeed, defendant does not rely on any "statutory penalties," *Blanton* 489 U.S. at 543, pertaining to § 113(a)(4) in support of his motion. He points instead to a "collateral consequence" under a wholly different statute having nothing to do with the merits of this case: the Gun Control Act of 1968. *See* 18 U.S.C. § 922(g)(9). Congress's determination in § 922(g)(9) that individuals convicted of crimes involving domestic violence should be prohibited from possessing firearms, defendant maintains, indicates that Congress deemed *his* violation of 18 U.S.C. § 113(a)(4) to be a "serious crime." Defendant offers no support for that contention, and the only federal court of appeals to consider the argument has squarely rejected it. *See United States v. Chavez*, 204 F.3d 1305 (11th Cir. 2000).

In *Chavez*, the defendant was convicted of misdemeanor assault in violation of § 113(a)(4) after a bench trial and sentenced to five years' probation with a variety of discretionary conditions. *See id.* at 1309–10. As it happened, the victim of the assault was the defendant's wife. *See id.* at 1309. The defendant appealed the denial of his motion for a jury trial, arguing, like defendant here, that the resulting deprivation of his Second Amendment right to bear arms under § 922(g)(9) served as "evidence of the seriousness of his offense" and thereby established his Sixth Amendment right to a jury. *Chavez*, 204 F.3d at 1313 (11th Cir. 2000). The Eleventh Circuit dismissed the claim and affirmed the conviction. It noted that the Act, in defining the "misdemeanor crimes of domestic violence" that would result in a person's being prohibited from possessing firearms, required convictions by juries (or valid waivers of jury trial) only where "the person [to be prohibited from possessing a firearm] was entitled to a jury trial." *See* 204 F.3d at 1314 (quoting 18 U.S.C. § 921(a)(33)(B)(i)(II)). As a result, the *Chavez* court concluded, "[t]he statute's express language convey[ed] Congress' recognition that some

5

domestic violence offenses do not carry with them the entitlement to a jury trial even though a conviction results in the prohibition of firearm possession." *Id.* By extension, the court held, that prohibition is only "a collateral consequence of conviction that does not render [a violation of § 113(a)(4) in the domestic violence context] sufficiently serious to entitle [the defendant] to a trial by jury." *Id.*

Defendant acknowledges *Chavez* but argues that it should be disregarded because the court failed to appreciate the constitutional significance of the right to bear arms. (Def. Mem. at 7–8.) Defendant emphasizes that *Chavez* was decided eight years before the Supreme Court recognized an individual right under the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and that the *Chavez* court thus observed that the defendant "might not have any claim under the Second Amendment" at all. (Def. Mem. at 8 & n.4 ("[G]iven that the right to arms has since been recognized as a matter of constitutional magnitude, this Court should not afford the *Chavez* decision deference.").

The fact that *Chavez* lacked the benefit of *Heller* does nothing, however, to limit the force of *Chavez*'s holding. The logic of *Chavez* was not that defendant suffered no constitutionally significant deprivation in light of the limits of the Second Amendment but only that Congress did not *deem* any deprivation under 18 U.S.C. § 922(g)(9) to be as severe as incarceration and thus to trigger a right to trial by jury. Accordingly, the *Chavez* court expressly stated that the actual scope of the defendant's Second Amendment right was irrelevant to the disposition of the case. *See Chavez*, 204 F.3d at 1313 n.5 ("We need not reach the [Second Amendment] issue because, as discussed below, even if [the defendant] did have some right to bear arms he could have been deprived of it without a jury under these circumstances.").

Defendant nevertheless urges this Court to follow the district court's two-page decision in *United States v. Smith*, 151 F. Supp. 2d 1316 (D. Okla. 2001), which was handed down just a year after *Chavez* and seven years before *Heller*. (Def. Mem. at 7.) The *Smith* court rejected *Chavez*'s reasoning, but not, as defendant suggests, on the basis of its prescient interpretation of the Second Amendment. Instead, the *Smith* court concluded that *Chavez* deferred unduly to Congress's own assessment of the seriousness of "misdemeanor crimes of domestic violence," and the resulting firearm prohibition, for Sixth Amendment purposes:

> In *Chavez*, the court focused on the fact that in 18 U.S.C. § 921(a)(33)(B)(i)(II) Congress recognized that some domestic violence offenses do not carry the right to a jury trial even though a conviction results in the prohibition of firearm possession. However, the issue is not whether *Congress* recognized a right to a jury trial for domestic violence offenses. The issue is *whether the penalty Congress attached to the offense was serious enough* to entitle the Defendant to a jury trial under the 6th Amendment. Having examined that issue, the Court finds that a lifetime prohibition on the possession of a firearm is a serious penalty which entitles a Defendant to a jury trial under the 6th Amendment.

*Smith*, 151 F. Supp. 2d at 1317 (emphases added). Under the apparent logic of *Smith*, the legislature's own assessment of the severity of the penalty that the legislature has authorized for a crime is immaterial to the Sixth Amendment analysis; instead, whether a penalty is "severe" is something that "the Court finds" after determining whether "[s]ubstantial segments of American society hold strong opinions on the issue." *Id.*

Despite defendant's characterization of *Smith* as "well-reasoned and persuasive," (Def. Mem. at 7), the *Smith* court's "strong opinions" standard for assessing penal severity under the Sixth Amendment has not been adopted by any other court. Indeed, both federal courts to consider the issue raised in *Smith* and *Chavez* have rejected *Smith* and followed *Chavez*. *See*

7

*United States v. Jardee*, No. 4:09-mj-091, 2010 WL 565242 (D. N.D. Feb. 12, 2010); *United States v. Combs*, No. 8:05-CR-271, 2005 WL 3262983 (D. Neb. Dec. 1, 2005).

The District of North Dakota's decision in *Jardee* is particularly relevant to defendant's claim that *Heller* and its progeny have transformed the prohibition on possessing firearms under § 922(g)(9) into such a "deprivation of a fundamental constitutional right" that it qualifies as "a serious penalty" for Sixth Amendment purposes. *Jardee* is the only case to consider this argument, and the court expressly rejected it:

> [H]ere, while there is no question that a lifetime prohibition against possessing weapons is a substantial infringement upon one's rights, *see District of Columbia v. Heller*, it is not of the same order of magnitude as the severe deprivation of liberty that results from six months' incarceration—even without consideration of the attendant consequences that may follow from imprisonment for that length of time, *e.g.*, humiliation, public opprobrium, and possible loss of a employment. In other words, although it may come right up to it, the potential lifetime firearms prohibition does not "puncture the 6-month incarceration line." *Blanton*, 489 U.S. at 543.

*Jardee*, 2010 WL 565242, at *4 (internal citations omitted). As the *Jardee* court emphasized in discussing and following the Eleventh Circuit's holding in *Chavez*, the ultimate defect in arguing from the severity of the firearms ban is that Congress plainly did not deem the ban so severe as to trigger the Sixth Amendment. *See id.* This Court should follow *Chavez, Jardee*, and *Combs*, and reject defendant's invitation to follow *Smith*.

### III. The Prohibition on Possessing Firearms Under § 922(g)(9) Is Not a "Penalty" Authorized for the Punishment of Violations of § 113(a)(4) and Thus Is Irrelevant To Determinations of Whether Such Violations Are "Serious Crimes."

In the final analysis, the fundamental error in defendant's argument is in casting the prohibition under the Gun Control Act as a criminal "penalty" for Sixth Amendment purposes.

8

The prohibition under § 922(g)(9) arises from a domestic relationship, which is a fact that need not be proven in any prior criminal proceeding. *See United States v. Hayes*, 555 U.S. 415, 129 S. Ct. 1079, 1087 (2009) (holding that existence of domestic relationship defining misdemeanor crime of domestic violence "need not be denominated an element of the predicate offense"). The prohibition under § 922(g)(9) cannot thus be regarded as a penalty for a "crime," which requires all elements to proven beyond a reasonable doubt as well as to a jury. *See Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). Because it is not a "statutory penalty" authorized for the punishment of a crime, the prohibition simply does not reflect Congress's determination that the underlying crime is "serious" or "petty" for Sixth Amendment purposes. *See Lewis*, 518 U.S. at 328 ("The maximum authorized penalty provides an objective indicatio[n] of the seriousness with which society regards the offense, and it is that indication that is used to determine whether a jury trial is required, not the particularities of an individual case." (Internal quotation and citation omitted)).

(Continued on next page.)

**CONCLUSION**

For the foregoing reasons, the United States respectfully urges that defendant's motion for a jury trial be denied.

Dated this 5th day of October 2011.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney
District of Oregon

s/ *Ryan W. Bounds*
RYAN W. BOUNDS, OSB #00012
Assistant United States Attorney