Ellen C. Pitcher, OSB No. 81445
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: ellen_pitcher@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | **CR No. 11-149 SU** |
| | **Plaintiff,** | **REPLY TO THE GOVERNMENT'S** |
| | | **RESPONSE TO DEFENDANT'S** |
| **vs.** | | **MOTION FOR JURY TRIAL** |
| **BRIAN GENE SNOW,** | | |
| | **Defendant.** | |

---

The defendant, Brian Snow, through his attorney, Assistant Federal Public

Defender Ellen Pitcher, submits this reply memorandum in support of his motion for a

jury trial.  Mr. Snow asserts that under the Sixth Amendment to the United States

Constitution, he is entitled to a jury trial.  In particular, the collateral impact of a

conviction under 18 U.S.C. § 113(a)(4), specifically upon Mr. Snow's right to possess a

firearm, demonstrate that assault under § 113(a)(4) in the domestic violence context is a

"serious offense" and that Mr. Snow is entitled to trial by jury.

I.      **THE EFFECTS OF PROSECUTION UNDER 18 U.S.C. § 922(g)(9) ARE
RELEVANT TO ASSESSING THE SERIOUSNESS OF THE CRIME UNDER
18 U.S.C. § 113(a)(4).**

A.      **Collateral Consequences May Be Examined To Determine Whether
Congress Considers A Crime "Serious."**

The government errs in asserting that collateral consequences are irrelevant to

the analysis established by *Blanton v. City of North Las Vegas, Nevada*, 489 U.S. 538, 541

(1989).  (Gov't Response at 4).  To the contrary, *Blanton* allows this Court to examine any

"objective indication of the seriousness with which society regards the offense."  489

U.S. at 541.  This expansive expression of *Blanton*'s test coincides with *D.C. v. Clawans,*

one of the first Supreme Court decisions to apply the "objective indication" test, which

also allows flexibility in the court's examination:

> Doubts [as to the seriousness of a crime] must be resolved, not subjectively
> by recourse of the judge to his own sympathy and emotions, but by
> *objective standards such as may be observed in the laws and practices of the
> community* taken as a gauge of its social and ethical judgments.

300 U.S. 617, 628 (1937) (emphasis added).  Thus, while *Blanton* may place great

emphasis on the maximum statutory penalty of incarceration, it does not preclude the

consideration of other objective criteria.

The Government relies on *Lewis v. United States* for the proposition that collateral consequences are irrelevant to the Court's determination because the Court should not examine "the particularities of an individual case." 518 U.S. 322, 328 (1996). However, *Lewis* in not on point. In *Lewis,* the Supreme Court addressed a defendant who received a single bench trial for multiple "petty offenses." The defendant did not argue that each distinct "petty offense" was deserving of a jury trial based on its severity of punishment. Instead, the defendant conceded that standing alone each offense was "petty." But he argued that since the trial court consolidated multiple counts of a petty offense, the resulting sentence would exceed sixth months. The defendant requested a jury based upon the particular circumstances of a consolidated trial.

This argument was correctly rejected by the Supreme Court, because the classification of an offense as a "serious offense" rests on an evaluation of the punishment prescribed for a conviction on an individual count. It does not rest on the individual particularities arising from procedural choices made by the court or the prosecution (i.e., consolidation for trial or an indictment on multiple counts). *Id*. Thus, the holding of *Lewis* had nothing to do with collateral consequences.

Furthermore, even if *Lewis* was on point, the punishment that Mr. Snow faces is not

particular to one individual; rather, the punishment applies to every single individual

indicted for a violation of §113(a)(4) arising out of domestic violence.

> **B.     The Effect Of Prosecution Under §922(g)(9) May Be Properly Characterized As A "Statutory Penalty."**

Even though this Court may analyze collateral consequences, it should be noted

that the effect of a § 922(g)(9) prosecution is a maximum "statutory penalty" of ten years

in prison.  A "statutory penalty" is "[a] penalty imposed for a statutory violation; esp., a

penalty imposing *automatic* liability on a wrongdoer for violation of a statute's terms . . .

."  *Black's Law Dictionary* 1247 (9th ed. 2009) (emphasis added).  The effect of exposure to

prosecution under §922(g)(9) fits squarely within this definition.  Furthermore, upon

conviction for a misdemeanor crime of domestic violence, the deprivation of the Second

Amendment right follows automatically, immediately, and without exception.  To

classify such an effect as "collateral" inaccurately characterizes the very direct impact

that Congress intended to have upon conviction under § 113(a)(4) and similar offenses.

> **C.     The Fact That 18 U.S.C. § 922(g)(9) Is A Separate Statute Is Immaterial.**

The Government errs in asserting that the nature of §922(g)(9), as a distinct

legislative act from §113(a)(4), makes it irrelevant to the case at hand.  (Gov't Response

at 5).  The fact that § 922(g)(9) is a separate statute does nothing to vitiate the direct

effect that Congress clearly intended to have upon those convicted under § 113(a)(4) in a

domestic violence context.  *Blanton*'s use of the word "penalty" includes just this type of

"other penalt[y] that [Congress] attaches to the offense."  489 U.S. at 542.  The Supreme

Court makes it clear that "[a] defendant is entitled to a jury trial . . . if he can

demonstrate that *any additional statutory penalties*" indicate a legislative determination

that the crime is serious.  *Id*. at 543 (emphasis added).  There is simply no requirement

that all "penalties" to be considered must be contained within the same legislative act,

and such a requirement would serve no logical purpose.

II.     **THE HOLDING IN** *CHAVEZ* **INCORRECTLY INTERPRETS** *BLANTON*,
        **UNDERVALUES THE SECOND AMENDMENT AS SUBSEQUENTLY
        CONSTRUED BY** *HELLER*, **AND SHOULD NOT BE ACCORDED
        DEFERENCE BY THIS COURT.**

The Government urges the Court to accept the reasoning of  *United States v.*

*Chavez*, 204 F.3d 1305 (11th Cir. 2000), however, the reasoning of *Chavez* is unpersuasive

for two reasons: (1) it misconstrues the test established by *Blanton* and (2) it fails to

appreciate the scope of the Second Amendment rights guaranteed to individuals.

First, *Chavez* focuses on the language of 18 U.S.C. § 921(a)(33)(B)(i), which makes

reference to the possibility that some misdemeanor crimes of domestic violence may not

require a jury trial.  204 F.3d at 1314.  It relies on this statutory language to assert that

Congress did not view the deprivation of the Second Amendment right as sufficient to

merit a jury trial.  This reasoning is flawed.

The test under *Blanton* "is not whether Congress recognized a right to a jury trial

for domestic violence offenses[, the] issue is *whether the penalty Congress attached to the*

*offense* was serious enough to entitle the Defendant to a jury trial under the 6th

Amendment."[1] *United States v. Smith*, 151 F.Supp.2d 1316, 1317 (N.D. Okla. 2001)

(emphasis added).  The reasoning of the Eleventh Circuit would improperly allow any

number of severe, non-incarceration penalties to be imposed by Congress without the

benefit of a jury trial, so long as there was some hint from Congress that a jury trial was

unnecessary.  This would undermine the primary purpose of the Sixth Amendment to

"prevent the possibility of oppression by the Government."  *Baldwin v. New York*, 399

U.S. 66, 72 (1970).

The Government acknowledges that the logic of *Chavez* was "only that Congress

did not *deem* any deprivation under 18 U.S.C. § 922(g)(9) to be as severe as incarceration

and thus to trigger a right to trial by jury."  (Gov't Response at 6) (emphasis in original).

However, this is exactly the error of *Chavez*.  It is not for Congress to *deem* by mere

suggestion which crimes merit Sixth Amendment protection, it is for Congress to *deem*

by its imposition of severe punishment that a crime is "serious."  This is the test

established by *Blanton* and correctly applied by *Smith.*

---

[1]The Government argues that *Smith* held that the severity of a crime is
"something that 'the Court finds' after determining whether '[s]ubstantial segments of
American society hold strong opinions on the issue.'" Gov't Response at 7.  The
Government confuses *Smith*'s evaluation of the gravity of the punishment, with the
source from which the *Smith* court draws "objective indications" of Congress' view of
the severity of the crime.  *Smith* correctly draws these indications from the punishment
mandated by Congress, as required by *Blanton.*

Second, in light of *Heller*, *Chavez* should not be afforded deference because it

undervalues the right guaranteed by the Second Amendment.  Indeed, the *Chavez* court

specifically limited the right to possess firearms with that rejected in *Heller:* that it is tied

to participation in a state-run militia.  *See Chavez*, 204 F.3d at 1313 n.5 ("According to

precedent of the Supreme Court and this Court, Chavez might not have any claim

under the Second Amendment since he has not shown his gun possession is reasonably

related to a state-run militia.")

Finally, the Government's reliance on two unpublished district court cases citing

*Chavez* is misplaced.  *See United States v. Jardee*, No. 4:09-mj-091, 2010 WL 565242 (D.N.D.

Feb. 12, 2010); *United States v. Combs*, No. 8:05-CR-271, 2005 WL 3262983 (D. Neb. Dec. 1,

2005).   In addition to being unpublished, the District Court's opinion in *Combs* arises in

a wholly different procedural posture, after the defendant has been accused of violating

18 U.S.C. §922(g)(9) after conviction of a misdemeanor crime of violence for which the

municipal code did not provide a jury trial.  It is unclear from the facts in the opinion

whether Combs had ever actually sought a jury trial in the underlying case.

The *Jardee* opinion takes an overly narrow view of the inquiry into the

seriousness of the punishment resulting from conviction, concluding that "the most

important consideration is whether it substantially adds to the severity of the

deprivation of liberty resulting from a jail term of six months." *Jardee* at 4.  This is an

incorrect reading of *Blanton,* whose foundation rests upon placing a value on the loss

imposed by any punishment mandated by Congress, and *comparing* that value to the

loss of liberty suffered during incarceration.  *See Blanton*, 489 U.S. at 543.

In the final analysis, this motion will be determined by the value placed upon the

permanent deprivation of the individual right to possess firearms guaranteed by the

Second Amendment.  *Heller* makes it clear that its value is tantamount to any other

constitutional right:

> The very enumeration of the right takes out of the hands of government-
> even the Third Branch of Government-the power to decide on a case-by-
> case basis whether the right is *really worth* insisting upon.  A constitutional
> guarantee subject to future judges' assessments of its usefulness is no
> constitutional guarantee at all.

*Heller*, 554 U.S. at 635 (emphasis in original).

Under *Blanton*, the issue is whether the penalty Congress attached to the offense

is serious enough to entitle the Defendant to a jury trial under the Sixth Amendment.

*Heller* makes is quite clear that the Second Amendment right is fundamental; therefore,

its deprivation is severe.

## CONCLUSION

The collateral consequence of a lifetime prohibition on the possession of firearms

which would result upon conviction under §113(a)(4) in the domestic violence context

converts this  prosecution into a serious offense entitling Mr. Snow to a jury trial.  For

the foregoing reasons, Mr. Snow respectfully requests that his Motion for a Jury Trial be granted.

RESPECTFULLY SUBMITTED this 12th day of October, 2011.

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Attorney for Defendant